**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERTS, TAYLOR & SENSABAUGH, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-06-2197 |
| LEXINGTON INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

**ORDER DENYING MOTION FOR RECONSIDERATION**

Lexington Insurance Company ("Lexington") moves for reconsideration of this court's order granting the motion for partial summary judgment filed by the declaratory judgment plaintiff, Roberts, Taylor & Sensabaugh ("Roberts"). (Docket Entry No. 24). Lexington asks the court to reconsider its finding that Lexington had a duty to defend Roberts in a state-court lawsuit filed against it by a subcontractor's employee. (Docket Entry No. 25). Roberts has responded. (Docket Entry No. 26). Based on a careful review of the motion, the response, the record, and the applicable law, this court denies Lexington's motion for reconsideration. The reasons are set out below.

**I.   Background**

The motion for partial summary judgment and this motion for reconsideration raise a question that is unsettled under Texas law: the extent to which evidence beyond a

complaint and an insurance policy may be considered to determine whether a duty to defend is present. That question has been discussed, but not settled, in recent Texas cases. The issue may be decided by the Texas Supreme Court, but the timing is uncertain. As a result, this court must either stay this case indefinitely or make an *Erie* guess as to how the Texas court is likely to rule. Neither party has proposed a stay. Accordingly, the *Erie* guess is set out below.

Roberts was a general contractor under a construction contract with the City of Beaumont for improvements to a pump station. On January 28, 2003, Roberts and Eagle-Pro Engineering, Inc. ("Eagle-Pro") entered into a subcontract for Eagle-Pro to do part of the work under the construction contract. The Roberts–Eagle-Pro subcontract required Eagle-Pro to name Roberts as an additional insured on Eagle-Pro's commercial general liability ("CGL") insurance policy. (*Id.*, Ex. B at 0059). Eagle-Pro obtained its CGL policy from Lexington. (Docket Entry No. 16, Ex. A at 0010). The policy included an additional-insured endorsement, which defined an "Insured" to include "any person or organization [the named insured is] required to include as an additional insured on this policy by a written contract. . . ." (Docket Entry No. 16, Ex. A at 0038). The endorsement provided coverage for an additional insured for liability "arising out of [the named insured's] work . . . for that additional insured. . . ." (*Id.*, Ex. A at 0038).

On February 19, 2003, Eagle-Pro subcontracted some of the work on the construction to Champion General Services ("Champion"). (Docket Entry No. 16., Ex. C). The plaintiff

2

in the underlying lawsuit, Keith Jenkins, was a Champion employee. Jenkins alleged that he was injured on May 5, 2003 while working on the construction project with a Roberts employee, J.B. White. Jenkins sued Roberts and White in state court in Jefferson County, Texas.[1] Jenkins asserted claims against Roberts for negligent entrustment, negligent hiring, negligent training, negligent supervision, and vicarious liability. (*Id.*). Jenkins alleged that he "was acting within the course and scope of his employment with Champion General Services at the Pine Street Water Plant, in Beaumont, Texas" when J.B. White, Roberts's employee, "was operating a hydraulic jack in an unsafe manner" and a piece of lumber hit Jenkins on the forehead and hand. (Docket Entry No. 16., Ex. D). Jenkins did not allege that as a Champion employee working on the project, he was working under a subcontract with Eagle-Pro, which was in turn working as a subcontractor of Roberts.

Lexington refused to defend or indemnify Roberts in Jenkins's state-court suit on the grounds that the indemnity provision of Roberts's contract with Eagle-Pro was invalid and that Roberts was not covered under Eagle-Pro's CGL policy. (Docket Entry No. 18, Exs. C, D). On June 29, 2006, Roberts sued Lexington, seeking a declaratory judgment that Lexington owed a duty to defend and indemnify Roberts in the underlying suit. Roberts moved for partial summary judgment on the duty to defend. (Docket Entry No. 16). Lexington cross-moved for summary judgment that it had no duty to defend or indemnify

---

[1] *Keith Jenkins v. Roberts, Taylor and Sensabaugh, Inc. et al.*, Cause No. B170384, in the 60th Judicial District court of Jefferson County, Texas. The underlying suit has since settled.

Roberts under Eagle-Pro's CGL policy. (Docket Entry No. 18).

Lexington agreed that extrinsic evidence of the subcontract between Roberts and Eagle-Pro was admissible to show that Roberts was an additional insured under the CGL policy Lexington issued to Eagle-Pro. Lexington disputed that extrinsic evidence of the Eagle-Pro–Champion sub-subcontract was admissible to show that Roberts's alleged liability to Jenkins "arose out of" his work for Champion under that sub-subcontract. [2]

This court agreed with the parties that under Texas law, extrinsic evidence of the Roberts–Eagle-Pro subcontract was admissible to show whether Roberts was an additional insured under Eagle-Pro's CGL policy. This court also held that extrinsic evidence of the Eagle-Pro–Champion sub-subcontract was admissible to show whether Roberts's alleged liability to Jenkins "arose out of" his work for or on behalf of Eagle-Pro under its subcontract with Roberts. Based on this evidence, this court found that Roberts was an additional insured under Eagle-Pro's CGL policy and that Roberts's liability to Jenkins "arose out of" work done on Eagle-Pro's behalf under its subcontract with Roberts. As a result, Lexington had a duty to defend Roberts in the underlying *Jenkins* suit.

In its motion for reconsideration, Lexington does not dispute that Roberts is an additional insured under the Roberts–Eagle-Pro subcontract. Roberts agrees that extrinsic evidence of that subcontract was properly admitted. Lexington does dispute that evidence

---

[2] The parties also disputed whether Roberts had authorized the work Jenkins was doing under the Eagle-Pro–Roberts subcontract, but this issue is not raised in Lexington's motion for reconsideration.

of the Eagle-Pro–Champion sub-subcontract is admissible to show that Jenkins's work for Champion was under Champion's sub-subcontract with Eagle-Pro, which was in turn under Eagle-Pro's sub-subcontract with Roberts.[3]

## II.  Analysis

In its motion for reconsideration, Lexington contends that extrinsic evidence of the Eagle-Pro–Champion sub-subcontract was not admissible under Texas's "eight-corners" rule to show that Roberts's liability to Jenkins "arose out of" Champion's work for Eagle-Pro, which was in turn work for Roberts. The "eight-corners" or "complaint-allegation" rule generally limits the basis for determining an insurer's duty to defend to the allegations in the underlying lawsuit and the insurance policy language. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Some Texas courts have fashioned a narrow exception to this rule to allow parties to introduce extrinsic evidence "[w]hen the petition in the underlying lawsuit does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy." *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452 (Tex. App.–Corpus Christi 1992, writ denied); *see also Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418, 421 (Tex. App.–Waco 2000, pet. denied).

Lexington agrees that this exception is recognized under Texas law. Lexington

---

[3] As noted, Lexington does not challenge the analysis of whether, assuming that extrinsic evidence of the Eagle-Pro–Champion contract is admitted, there is no duty to defend because the injury alleged in the underlying lawsuit did not "arise out of" Eagle-Pro's work for Roberts because Roberts did not authorize it.

further agrees that extrinsic evidence of the Eagle-Pro–Roberts subcontract is admissible under this exception to show whether Roberts was an additional insured under the Eagle-Pro CGL policy. However, Lexington argues that extrinsic evidence of the Eagle-Pro–Champion sub-subcontract is not admissible to show whether Roberts's liability to Jenkins "arose out of" Eagle-Pro's work for Roberts.

The insurance contract provides coverage for an additional insured required to be named as such by a contract with the named insured, if the alleged liability arises out of the named insured's work for that additional insured. Lexington argues that extrinsic evidence of Roberts's contract with Eagle-Pro is admissible to show Roberts's status as an additional insured on the Eagle-Pro policy, but disputes that the Eagle-Pro–Champion contract is admissible to show that Roberts's alleged liability to Jenkins arose out of work performed on Roberts's behalf. Lexington's distinction between the admissibility of extrinsic evidence to show whether a named defendant is an additional insured (which Lexington describes as going to the "existence" of coverage) and the inadmissibility of the same type of evidence to show whether the defendant's liability arose out of its work as an additional insured for the named insured (which Lexington describes as going to the "scope of coverage") is not persuasive. The distinction the Texas courts use in analyzing whether and for what purpose extrinsic evidence may be admitted under the narrow exception to the eight-corners rule is "between cases in which the merit of the claim is the issue and those where the *coverage* of the insurance policy is in question. In the first instance the allegation of the petition controls,

and in the second the known or ascertainable facts are allowed to prevail." *Cook v. Ohio Cas. Ins. Co.*, 418 S.W.2d 712, 716 (Tex. Civ. App.–Texarkana 1967, no writ) (emphasis added); *see also Gonzales v. Am. States Ins. Co. of Texas*, 628 S.W.2d 184, 187 (Tex. App. – Corpus Christi 1982, no pet.) ("[W]here the basis for the refusal to defend is that the events giving rise to the suit are outside the *coverage* of the insurance policy, facts extrinsic to the claimant's petition may be used to determine whether a duty to defend exists.") (emphasis added). Lexington points to no cases holding that if a policy provides coverage for an additional insured's liability arising out of the named insured's work for the additional insured, evidence of a subcontract is admissible to show that the defendant is covered for the alleged liability because that defendant is an additional insured on the named insured's policy but evidence of a subcontract is not admissible to show that the defendant is covered for the alleged liability because it arose out of work done by the named insured for the additional insured.

Lexington's reliance on two recent cases from a Texas appellate court is misplaced. In *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, No. No. 14-05-00486-CV, 2006 WL 3040756, (Tex. App.–Houston [14th Dist.] Oct. 26, 2006, no pet.) (not designated for publication) and *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, – S.W.3d –, No. 14-05-00487-CV, 2006 WL 1892669 (Tex. App.–Houston [14th Dist.] 2006, no pet.), the courts refused to consider extrinsic evidence, but not because that evidence pertained to the scope of coverage rather than to the existence of coverage. The courts in these cases refused to

consider any extrinsic evidence based on the eight-corners rule and on the Texas Supreme Court's failure to recognize any exception to the rule.

In *Pine Oak*, a homebuilder was sued by five different homeowners seeking recovery for property damage to their homes resulting from improperly installed exterior insulation. Four of the plaintiffs alleged that a subcontractor performed the faulty construction work, but one failed to allege any facts from which the court could infer that subcontractors had worked on that plaintiff's home. The homebuilder wanted to introduce extrinsic evidence to show that subcontractors had performed the faulty work on that plaintiff's home. The appellate court described Texas law as recognizing both a narrow and a broader exception to the eight-corners rule. The first category consisted of cases in which courts admitted extrinsic evidence "to establish fundamental coverage facts such as 1) whether the person being sued is excluded as an insured under the policy; 2) whether the property in the lawsuit is excluded from coverage; and 3) whether an insurance policy exists." *Id.* at 5. The second category consisted of cases in which courts admitted extrinsic evidence "when the petition in the underlying lawsuit does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy." *Id.* at 5–6. The court excluded the extrinsic evidence that the defective construction work was performed by a subcontractor because that evidence "speaks to the specific alleged occurrence" and did not "fall within the parameters of this first category of extrinsic evidence cases." *Id.* at 6. The court refused to consider the extrinsic evidence showing that a subcontractor had performed work on the plaintiff's home

because "the Texas Supreme Court has only applied the eight-corners analysis in duty to defend cases and has resisted all opportunities to adopt a permissive extrinsic evidence stance in such cases." *Id.*

In *D.R. Horton*, the general contractor invoking the insurer's duty to defend and duty to indemnify was specifically named in the additional insured endorsement of its subcontractor's CGL liability. *D.R. Horton*, 2006 WL 3040756. The contractor wanted to introduce extrinsic evidence to show that its liability in the underlying suit "arose out of" a subcontractor's work on the contractor's behalf. The appellate court refused to consider the extrinsic evidence. Lexington argues that this refusal supports its position "that extrinsic evidence is inadmissible to analyze the 'arising out of' issue." (Docket Entry No. 24 at 5). The *D.R. Horton* court did not reject the extrinsic evidence because the evidence addressed whether the additional insured's liability "arose out of" the named insured's work for it. Rather, the court acknowledged "that some state and federal courts interpret Texas law to permit a court to consider extrinsic evidence in determining whether a petition states a covered claim." 2006 WL 3040756 at *5. The court refused to the admit extrinsic evidence under an exception to the eight-corners rule because "[t]o date . . . the Texas Supreme Court has not recognized such an exception" to the rule. *Id.* The court did not refuse to consider the extrinsic evidence because it addressed the "arising out of" issue, but because it was applying the eight-corners rule to reject all extrinsic evidence.

In analyzing the eight-corners rule, the Texas Supreme Court has not distinguished between extrinsic evidence that establishes "fundamental coverage facts" and extrinsic evidence that "speaks to the specific alleged occurrences." *Id.* at 5–6. Rather, the court has distinguished between extrinsic evidence that goes "strictly to the coverage issue"—which some courts admit—and extrinsic evidence that "contradict[s] any allegation in the third-party claimant's pleadings material to the merits of that underlying claim"—which courts continue to refuse to admit. *GuideOne Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). In *GuideOne*, the Texas Supreme Court did not decide the admissibility of extrinsic evidence that was limited to coverage and did not overlap with evidence on the merits, because the extrinsic evidence at issue contradicted "an allegation material, at least in part, to the merits of the third-party claim." *Id.* Because "[u]nder the eight-corners rule, the allegation's truth was not a matter for debate in a declaratory judgment action between insurer and insured," the court refused to consider the proffered extrinsic evidence. *Id.* The court declined to address whether to establish an exception to the eight-corners rule for extrinsic evidence pertaining strictly to coverage because the facts of *GuideOne* did not present that issue.

The critical distinction recognized by the Texas Supreme Court in *GuideOne* is between extrinsic evidence relevant only to coverage and extrinsic evidence that also bears on the merits of the underlying suit. Lexington is correct in stating that extrinsic evidence of coverage that also implicates the merits of the underlying lawsuit is not admissible under

10

the exception to the eight-corners rule. *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d at 309–10 ("GuideOne relies on extrinsic evidence that is relevant both to coverage and the merits and thus does not fit the above exception to the rule. . . . Those courts that have recognized an exception to the eight-corners rule have done so under limited circumstances involving pure coverage questions."). The Texas Supreme Court did not use the distinction stated in the *Pine Oak* case between inadmissible extrinsic evidence that "speaks to the specific alleged occurrence" and admissible extrinsic evidence of a "fundamental coverage fact." *Pine Oak*, 2006 WL 1892669 at *5–6.[4] *D.R. Horton* and *Pine Oak* do not support Lexington's distinction between evidence of the status of an additional insured and evidence of whether an additional insured's liability "arose out of" the named insured's work as separate issues to which different standards of extrinsic-evidence admissibility apply.

Courts analyzing "arising out of" language in additional insured policies consider this to be a coverage issue. *See Highland Park Shopping Village v. Trinity Universal Ins. Co.*, 36 S.W.3d 916, 918 (Tex. App.–Dallas 2001, no pet.) (finding that the appellants "were *covered* as additional insureds" because the injured employee's accident "arose out of" the named insured's work) (emphasis added); *McCarthy Bros. Co. v. Continental Lloyds Ins.*

---

[4] The extrinsic evidence offered in *Pine Oak* directly contradicted the allegations the plaintiff made in the underlying suit. The plaintiff alleged that the defective design and construction work was performed by Pine Oak; the extrinsic evidence was offered to show that the work was actually performed by subcontractors. The extrinsic evidence contradicted the allegations of the underlying suit complaint and pertained not only to coverage issues but also to the merits. As a result, it would appear to be inadmissible even under the approach taken in the *GuideOne* case.

*Co.*, 7 S.W.3d 725, 731 (Tex. App.–Austin, pet. denied) (holding that the additional insured "was *covered* by the additional-insured endorsements provided in the policies and was entitled to a defense under the policies" because the liability "arose out of" a necessary part of a subcontractor's work for the additional insured) (emphasis added); *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 454 (Tex. App.–Houston [1st Dist.] 1999, pet denied) (finding that the additional insured's alleged liability for the injuries of a subcontractor's employee "arose out of" the named insured's operations and was therefore "*covered* by the 'additional insured' provision") (emphasis added); *Granite Const. Co., Inc. v. Bituminous Ins. Cos.*, 832 S.W.2d 427, 430 (Tex. App.–Amarillo 1992, pet. denied) (holding that the additional insured "is not afforded *coverage*" because the injured employee's claim did not "arise out of" the named insured's operations performed by or on behalf of the additional insured) (emphasis added). Lexington correctly points out that in none of these cases did the courts rely on extrinsic evidence when determining whether the insurer owed the additional insured a duty to defend. (Docket Entry No. 24 at 3). These cases do, however, demonstrate that whether an additional insured's liability "arises out of" a named insured's work is a coverage question. The exception to the eight-corners rule that the Texas courts appear to recognize allows extrinsic evidence if the allegations provide inadequate information to determine coverage and if the extrinsic evidence relates only to coverage and does not overlap with the merits. *See Wade*, 827 S.W.2d at 452; *Gonzales*, 628 S.W.2d at 187; *Cook*, 418 S.W.2d at 716. The Texas courts do not appear to follow Lexington's distinction

between admissible extrinsic evidence that speaks to the existence of coverage, such as party's status as a named insured, and inadmissible extrinsic evidence that speaks to the scope of coverage, such as whether an additional insured's liability "arose out of" the named insured's work for the additional insured.  Under Texas case law, issues relating to whether an alleged liability "arises out of" work for the additional insured under a CGL policy speaks to the policy's coverage, *see Highland Park,* 36 S.W.3d at 918; *McCarthy*, 7 S.W.3d at 731; *Admiral*, 988 S.W.2d at 454; *Granite Const. Co.*, 832 S.W.2d at 430.  Extrinsic evidence that speaks to whether Roberts's liability to Jenkins arises out of work performed by the named insured on Roberts's behalf is admissible under the Texas cases if that evidence does not also speak to the merits or contradict the allegations of the underlying suit.

Lexington argues that the extrinsic evidence of the Eagle-Pro–Champions sub-subcontract does overlap with the merits.  Lexington argues that evidence that Jenkins's injury "arose out of" Eagle-Pro's work for Roberts "had the ability to affect the merits of the liability lawsuit by raising the possibility that Eagle-Pro had potential liability."  (Docket Entry No. 24 at 6).  However, Lexington does not identify a basis for its argument that the extrinsic evidence of the Eagle-Pro–Champion sub-subcontract raises such a possibility.  Unlike the extrinsic evidence at issue in *Pine Oaks*, the proffered extrinsic evidence of the Eagle-Pro–Champion sub-subcontract does not contradict the pleadings and does not overlap with the merits. The evidence of the contractual relationship between Eagle-Pro and Champion neither controverts nor expands the allegations in the underlying suit.  The

13

pleadings in the underlying lawsuit are not sufficient to determine coverage. Jenkins alleged only that he worked on the pump station project and that a Roberts employee working on the project was negligent. In his state-court suit, Jenkins did not allege that Champion and Roberts were the only entities working on the project. The proffered extrinsic evidence – the sub-subcontract between Champion and Eagle-Pro – does not contradict Jenkins's allegations or show that either Champion or Eagle-Pro was negligent. In contrast, in *Pine Oaks* the extrinsic evidence showing that the faulty construction work was performed by subcontractors directly contradicted the plaintiff's allegations that the general contractor was responsible for the faulty work. *Pine Oaks* does not support excluding Roberts's proffered extrinsic evidence of the Eagle-Pro–Champion subcontract. This evidence does not "engage the truth or falsity of any facts alleged in the underlying case," *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004) and does not "affect the third party's right of recovery," *GuideOne*, 197 S.W.3d at 309 n.1 (citing 1 ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 5.02[2][b][ii] at 5-27 (2006)). This extrinsic evidence does not implicate the merits of the underlying lawsuit. Admitting evidence that Jenkins's work for Champion was under a sub-subcontract with Eagle-Pro is not inconsistent with Texas case law, which recognizes the interpretation of "arising out of" to be a question of coverage and which distinguishes between the admissibility of extrinsic evidence pertaining strictly to coverage and the inadmissibility of extrinsic evidence that bears on the merits of the underlying suit. The motion for reconsideration is accordingly denied.

**VI.     Conclusion and Order**

Lexington's motion for reconsideration is denied.

SIGNED on October 9, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge